989 So.2d 819 (2008)
Joe BANKS, et al.
v.
NEW ORLEANS AVIATION BOARD.
No. 2008-CA-0065.
Court of Appeal of Louisiana, Fourth Circuit.
July 9, 2008.
*820 James E. Stovall, Covington, LA, for Joe Banks, et al.
Carl A. Butler, Michael L. Fantaci, LeBlanc Butler, L.L.C., Metairie, LA, for The New Orleans Aviation Board.
Gilbert R. Buras, Jr. New Orleans, LA, for Lisa Hudson, Personnel Director, and The Department of Civil Service.
Court composed of Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD, Judge Pro Tempore MOON LANDRIEU.
MOON LANDRIEU, Judge Pro Tempore.
The instant litigation arises from the extensive layoffs of New Orleans civil service personnel immediately following Hurricane Katrina. The plaintiffs/appellants, former permanent employees of the New Orleans Aviation Board ("the NOAB"), seek review of the dismissal of their appeals to the Civil Service Commission of *821 New Orleans ("the Commission"). Following a detailed review of the record, we find no error and affirm the decision of the Commission.

FACTS
Following landfall on August 29, 2005, Hurricane Katrina caused catastrophic devastation to the City of New Orleans ("the City"). On September 29, 2005, while the City was subject of an unprecedented mandatory evacuation order and declared state of emergency, the Commission convened a special meeting to adopt rules and the issuance of orders to address the City's anticipated request for a massive reduction in workforce due to the rapid depletion of the City's budgetary reserves. Specifically, the Commission rendered an order granting Lisa Hudson, the Committee's Director of Personnel, the broad discretion to handle all personnel matters, including the authorization to execute the predicted layoff plan upon request. In doing so, the Commission ordered Ms. Hudson was "... specifically authorized to consider, adopt and implement exceptions or suspensions of the following [Civil Service] Rules upon a finding that such suspensions or exceptions are necessary for the efficient and orderly operation of the classified service: ... vi. Rule XII relative to Layoffs." CSC # 2, Minutes of the Special Emergency Session of the Civil Service Commission of the City of New Orleans, 9/29/05, at pp. 2-3.
Civil Service Commission Rule XII dictates the process to be followed in the event of a layoff. Particularly, Section 5 accounts for the ranking of employees by various factors including "service ratings" and length of service.[1] Ms. Hudson concluded, under the emergency circumstances, the actual ranking of employees in sequential order was impossible since she lacked the necessary administrative resources with only one staff member and the absence of accessible electronic information and documentation ordinarily required to orchestrate a layoff. Under normal circumstances with full access to electronic and documentary information and her normal support staff of thirty-seven (37) individuals, it would have taken in excess of forty-five (45) days to complete the task. Hearing Testimony of L. Hudson, 6/21/07, p. 21.
Ultimately, in order to comply with the Civil Service Commission Rules, Ms. Hudson relied on Rule XII, Section 5.6, to effectuate the layoff. It provides:
If an appointing authority feels that a certain employee is absolutely essential to the efficient and effective operation of the organization unit because of special skills or abilities, and the appointing authority wishes to retain the employee despite his or her ranking on the layoff list, a written request must be submitted to the Personnel Director requesting permission to do so. This request must set forth, in detail, the specific skills and abilities possessed by the individual and the reasons that this particular employee be retained despite his or her ranking on the layoff list.
*822 Applying such, Ms. Hudson concluded she was vested with the necessary authority to implement the blanket layoff and exempt only the employees deemed essential to the operation of the City. She opined, with the broad application of the provision, the ranking of personnel and other factors would be irrelevant since all other employees would be laid off.
In order to implement the layoff pursuant to Section 5.6, Ms. Hudson and the City's Chief Administrative Officer, Brenda Hatfield, Ph.D., agreed the appointing authorities were in the best position to ascertain which City employees were deemed essential to the recovery of its respective operations. Therefore, Dr. Hatfield requested the appointing authorities (i.e., directors of all city departments) to submit a list of its employees deemed essential to the City's recovery. Each of the appointing authorities complied with the request. On October 10, 2005, Dr. Hatfield formally requested by letter that Ms. Hudson complete in four days, or as soon as practical, the anticipated layoff of approximately 3,000 employees considered nonessential to the operation of the City's infrastructure.[2] Dr. Hatfield attached to the correspondence a list of those employees, both classified and unclassified, who were determined to be "... essential and critical to the City's recovery based on each department's needs ..." Particularly, the NOAB proposed elimination of approximately seventy-five (75) classified personnel positions, and retention of approximately 117 employees deemed essential.[3] See, CSC # 3, Attachment III.
Accordingly, Ms. Hudson implemented the City's layoff of 2,929 employees. Approximately 5,236 essential personnel were retained to assist in the post-storm recovery.

PROCEDURAL HISTORY
In 1995, the plaintiffs, eighteen (18) former employees of the Louis Armstrong International Airport, instituted a petition for writ of mandamus against the Commission, Ms. Hudson and the City (collectively, "the defendants") in Civil District Court for the Parish Orleans seeking reinstatement to their former jobs. They urged they were removed from their classified permanent positions with the NOAB in contravention of the Louisiana Constitution and the Commission's rules. Joe Banks, et al. v. The City of New Orleans, et al., No. 05-12521, Civil District Court for the Parish of Orleans, Div. "F". In turn, the Commission and Ms. Hudson filed an exception of lack of subject matter jurisdiction alleging the plaintiffs' exclusive remedy was by way of appeal to the Commission. The district court denied the exception. On May 3, 2006, this court reversed the lower court and granted the exception. Joe Banks, et al. v. The City of New Orleans, et al., unpubl., 05-1513 (La. App. 4 Cir. 5/03/06). Relying on Louisiana *823 Constitution Article X, Sections 8, 10 and 12, we held "the layoff of an employee is a removal of an employee; jurisdiction thus lies first with the City Civil Service Commission, not the district court." Id.
Subsequently, the plaintiffs filed individual appeals with the Commission challenging their layoffs. The NOAB filed a Motion for Summary Disposition seeking dismissal of the appeals urging the employment terminations were fiscal decisions within its authority. Following a hearing, on April 16, 2007, the Commission held that, while Civil Service Commission Rule II, Section 4.1 prohibits appeals challenging an appointing authority's fiscal decision to layoff individual employees, the plaintiffs were entitled to appeal whether the Civil Service Commission Rules were properly applied relative to the layoff. Accordingly, the Commission added Ms. Hudson and the former Director of Aviation, Roy Williams, as parties to the proceedings. It ordered a hearing before a Hearing Examiner to elicit testimony and other evidence regarding the procedures employed to effectuate the layoff at issue.
In June 2007, a hearing was conducted before a Hearing Examiner. Ms. Hudson, Dr. Hatfield and Mr. Williams each testified and were subject to cross examination by counsel for the plaintiffs. Two months later, the Hearing Examiner rendered a report proposing the NOAB's Motion for Summary Disposition be granted. On October 22, 2007, the Commission, in a 3-1 vote, adopted the Hearing Examiner's report granting the Motion for Summary Disposition and dismissed the plaintiffs' appeals.[4]
The plaintiffs now seek appellate review of the dismissals. Specifically, they raise as error the unconstitutionality of the appellate proceedings, as well as the illegality of the manner in which the layoff was confected.[5]

DISCUSSION

Standard of Review
Decisions of the Commission are subject to appellate review on any questions of law or fact. La. Const. Art. X, Section 12(B); Walters v. Department of Police of New Orleans, 454 So.2d 106 (La. 1984). The standard of review is whether the Commission's conclusion is arbitrary or capricious, or manifestly wrong. Cha-Jua v. Department of Fire, 439 So.2d 1150, 1151 (La.App. 4 Cir.1983). However, although the Commission's factual findings may not be modified absent manifest error, the review of procedural decisions and questions of law falls within this court's traditional plenary function. As such, we are not limited to abuse of discretion or arbitrary and capricious standards of review in these instances. Perkins v. Sewerage and Water Bd., 95-1031 (La.App. 4 Cir. 2/29/96), 669 So.2d 726, 727.

Assignment of Error No. 1

Alleged Illegality of the Appellate Proceedings
In its first assignment of error, the plaintiffs assert that the post-termination *824 appellate hearing conducted by the Commission was insufficient to meet the minimum constitutional requirements. They contend the Commission failed to comply with this court's order in Banks I by denying each of them their right to a full appellate hearing as provided in Louisiana Constitution Article X, Section 12(B).[6] Specifically, the plaintiffs object to the fact they were each barred the opportunity to testify at the hearing before the Hearing Examiner regarding their employment status and ranking.
In contrast, the defendants urge the Commission fully addressed the plaintiffs' appellate claims relative to their layoffs and, thus, there was no need to afford each plaintiff the opportunity to offer testimony regarding their employment status in order to comply with this court's order in Banks I and Louisiana Constitution Article X, Section 12(B).
Permanent status as a classified civil servant is recognized as a property right under the Louisiana Constitution and cannot be deprived without due process of law. Bell v. Department of Health and Human Resources, 483 So.2d 945, 949 (La. 1986). Specifically, it is the permanent civil servant's property interest in continued employment that invokes constitutional protection. Arnett v. Kennedy, 416 U.S. 134, 166, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974). The parties disagree whether there exists a State constitutional right to continued employment under the context of a layoff. However, it is undisputed due process requires "some kind of a hearing" prior to the termination of a permanent civil servant with a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The hearing does not have to be elaborate; nor does it have to definitively resolve the propriety of the discharge. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The Louisiana Supreme Court has recognized the United States Supreme Court has held post-termination hearings, when combined with other safeguards, will suffice. Wilson v. City of New Orleans, 479 So.2d 891, 895 (La.1985) (relying on Arnett v. Kennedy, supra).
Applying these principles of law, it is undisputed pre-termination hearings were an impossibility for the thousands of classified civil servants subject of the post-Katrina layoff at issue. As such, the employees were barred prior to their dismissal from addressing their concerns relative to the manner in which the layoff would be conducted (i.e., failure to sequentially rank). Since due process is a flexible standard and calls for such procedural protections as the particular situation demands, the Commission's post-termination hearings were appropriate under the facts. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
As properly pointed out by the defendants, the only issue addressed by this court in Banks I was the question of subject matter jurisdiction. While this court held the Commission, rather than the district *825 court, had supervisory jurisdiction, we did not direct the Commission to take any action. Nor did we instruct the Commission on the manner in which it should exercise its appellate authority. Notwithstanding, the Commission took broad measures to ensure the plaintiffs' were afforded full procedural due process. Following its initial review of the plaintiffs' claims, the Commission added additional parties to the appellate proceeding and ordered a full hearing before a Hearing Examiner to address the legality of the layoff process as a whole. Extensive testimony from various City officials and documentary evidence relative to the reasons for and the measures utilized in the execution of the citywide layoff were elicited at the proceedings conducted before the Hearing Examiner. Counsel for the plaintiffs was given the opportunity to present an opening statement, cross examine the witnesses, and submit evidence relative to the layoff process. The Hearing Examiner submitted his recommendation proposing dismissal of the appeals on the basis the layoff was not in violation of the Civil Service Commission Rules or Ms. Hudson's discretionary authority. This written recommendation was subsequently reviewed and adopted by a panel of Commissioners. While we are cognizant the individual plaintiffs were not given the opportunity to testify as to his or her employment status or ranking, we can not say the proceedings were in violation of this Court's ruling in Banks I or Louisiana Constitution Article X, Section 12(B).
Accordingly, we find no merit in the plaintiffs assignment that they were denied procedural due process relative to the appellate proceedings.

Assignment of Error No. 2

Alleged Illegality of the Layoff Process
Next, the plaintiffs contest the legality of the layoff procedure implemented by the Commission. They argue, regardless of the post-Katrina emergency circumstances, the Commission erred in suspending their protections under the Louisiana Constitution and the Civil Service Commission Rules by disregarding the layoff procedure set forth in Civil Service Commission Rule XII, Section 5, relative to the sequential ranking of employees through merit, seniority and military preference.
As to the Commission's function in the layoff process, Louisiana Constitution Article X, Section 10(A)(3) demonstrates an intent to give only a ministerial role to the Commission in decision-making that results from fiscal necessities of administering the City's budget for its employees. Section 10(A)(3) states the Commission may determine the procedures for confecting layoffs, but the choice to execute the layoffs is a business and fiscal decision that belongs to the City, not to the Commission, barring any discriminatory intent or political motivation associated with the layoff.
The Louisiana Supreme Court has made it clear that Civil Service Commission Rules have the effect of law. Sanders v. Department of Health and Human Resources, 388 So.2d 768, 770 (La.1980); La. Const. Art. 10, Section 10(A)(4). State constitutional provisions relative to civil service and the Commission's rules are designed to secure adequate protection to career public servants from political discrimination and favoritism. In promoting the merit system, the intent of these laws is to guarantee the security and welfare of public service. Sanders, 388 So.2d at 771.
As stated earlier, Civil Service Commission Rule XII articulates the procedure to be followed in implementing layoffs. Pursuant to such, the Commission's Personnel Director compiles the service ratings and seniority of all employees subject to *826 the layoff and assigns respective rankings for the terminations. Section 5.6 of Rule XII provides an exception to the general ranking requirements to exempt from the layoff, at the request of an appointing authority and discretion of the Personnel Director, employees deemed "essential" regardless of the employee's ranking. Ms. Hudson testified at the hearing before the Hearing Examiner that Section 5.6 is normally implicated "at the end of the layoff process once you have a rank list completed." Hearing Testimony of L. Hudson, 6/21/07, p. 39. It is undisputed that Ms. Hudson utilized Section 5.6 as the measure to implement the post-Katrina layoff within the confines of the Civil Service Commission Rules.
In turning our attention to the appropriateness of the Commission's actions and, particularly, those of Ms. Hudson, we recognize this matter cannot be reviewed in a vacuum as is proposed by the plaintiffs. We are forever reminded of the extraordinary circumstances giving rise to the instant litigation. The City was facing an unparalleled financial crisis stemming from the vast devastation and abrupt loss of its financial resources from an unprecedented natural disaster. With the City's inability to sustain its workforce, the Commission was unduly burdened with the enormous task of eliminating all personnel, individuals already detrimentally affected by the storm, that were deemed not absolutely critical to the City's recovery. Compounding the problem, the Commission lacked the administrative resources to conduct the layoff as it would under ordinary circumstances.
Civil Service Commission Rule XII, Section 5.6 expressly grants the Personnel Director the necessary discretion to retain employees essential to an appointing authority, regardless of rank. The provision does not limit the instances in which the essential employee exemption would apply to a layoff process. While we acknowledge it was likely unforeseeable that Section 5.6 would be utilized to facilitate a layoff of the entirety of the City's personnel following a natural disaster, we can not say Ms. Hudson erred in relying on the provision under the facts.
As to the logistical application of Section 5.6 to the layoff, the plaintiffs urge their jobs were terminated at the "whim" of the Director of the NOAB without regard to any objective criteria. In support, they cite the Commission's failure to utilize the ranking factors set forth in Civil Service Commission Rule XII, Section 5. We find no merit in the plaintiffs' argument in this regard. All City employees, with the exception of those designated as essential, were laid off. As such, the Commission's sequential ranking of employees, aside from being impossible, was unnecessary. Moreover, Ms. Hudson and Dr. Hatfield, in light of the exigent circumstances and limited administrative resources, took a common sense approach in deferring to the appointing authorities regarding which individuals were critical to their respective recovery efforts. We are cognizant of the liberal protections afforded to civil servants in the merit system. See, Reimer v. Medical Center of Louisiana at New Orleans, 95-2799 (La.App. 4 Cir. 1/29/97), 688 So.2d 165, 168. Yet, there is no evidence upon which to draw a legitimate inference that the NOAB's selection of essential employees exempt from the layoff was driven by inappropriate influences or discrimination to the detriment of the plaintiffs.
In fact, our review of the record indicates the NOAB and the Commission took every measure to execute the layoff within the confines of the Civil Service Commission Rules so as to best protect the interests of the civil servants, while also balancing the City's need to eliminate *827 nonessential jobs. While we are sympathetic to the losses suffered by the plaintiffs from the aftermath of Hurricane Katrina, we nevertheless conclude Ms. Hudson's actions taken on behalf of the Commission were not an abuse of her discretion afforded by Civil Service Commission Rule XII, Section 5.6 or in contravention of any other State law.
Accordingly, we find the Commission was not manifestly erroneous, or arbitrary and capricious, in dismissing the plaintiffs' appeals.

DECREE
For the assigned reasons, we affirm the Civil Service Commission's decision in all respects.

AFFIRMED.
NOTES
[1] Civil Service Commission Rule XII, Section 5, entitled "Sequence of Ranking Factors for Regular Employees," provides in part:

5.1 Layoffs are determined by ranking in one of five categories, with Unsatisfactory being the first category affected, followed by Needs Improvement, Competent, Exceeds Requirements and Outstanding. . . . In order to determine the ranking of regular employees for an anticipated layoff, each employee's service ratings for no more than the past three years of consecutive service are averaged; the resultant scores are ranked in ascending order and grouped ...
[2] In correspondence dated October 10, 2005 directed to Ms. Hudson, Dr. Hatfield wrote:

The devastation created by the hurricane has resulted in unforeseen budgetary constraints rendering the City of New Orleans unable to finance its current payroll. The existing financial situation of the City has dictated mandatory reduction in personnel. The City of New Orleans has exhausted all attempts to secure additional funding in an effort to continue paying its employees, to no avail. In accordance with Civil Service Rule XII, Section 5.6, regarding layoffs, I am attaching for your handling a list of those employees both classified and unclassified, who have been determined to be essential. All other employees should be laid off as quickly as possible in order to reduce the City's expenditures.
See, CSC 3.
[3] Of the 117 essential employees retained by the City, 111 were classified personnel.
[4] In support of his reasons, the Commissioner that dissented from the Hearing Examiner's report stated the Personnel Director's inability to rank the employees should not have infringed on their due process rights to challenge the designations of "essential" or "non-essential" in the layoff process at a duly noticed hearing.
[5] The plaintiffs present for this court's consideration the hypothetical question whether future Civil Service Commission layoffs would involve the same procedures implemented in the post-Katrina layoff subject of these proceedings. This question is not at issue or relevant to the instant proceedings. Thus, we will not address such for purposes of this appeal.
[6] Louisiana Constitution Article X, Section 12(B), entitled "Cities", provides:

Each city commission established by Part I of this Article shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths. It may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses. The decision of a commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty calendar days after its decision becomes final.