991 So.2d 558 (2008)
Randolph SCOTT
v.
DIVISION OF HOUSING & NEIGHBORHOOD DEVELOPMENT.
No. 2008-CA-0068.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 2008.
*559 James E. Stovall, Covington, LA, for Randolph Scott.
Victor L. Papai, Jr., Assistant City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Penya Moses Fields, City Attorney, New Orleans, LA, for Division of Housing and Neighborhood Development.
(Court composed of Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD, Judge Pro Tempore MOON LANDRIEU).
MOON LANDRIEU, Judge Pro Tempore.
The instant litigation arises from the massive layoff of City of New Orleans (hereinafter "City") civil service personnel following Hurricane Katrina. The plaintiff/appellant, Randolph Scott, a former permanent employee of the Department of Housing and Neighborhood Development (hereinafter "Department of Housing"), seeks review of the dismissal of his appeal by the Civil Service Commission of New Orleans (hereinafter "Commission"). Following a detailed review of the record and applicable law, we affirm for the reasons articulated below.

Facts and Procedural History
Approximately six weeks after Hurricane Katrina made landfall causing catastrophic devastation to the City, Mr. Scott was discharged from his position with the Department of Housing in connection with a fiscal layoff of 2,929 City employees. A letter dated October 14, 2005 was directed *560 by the Commission to Mr. Scott advising of his employment termination.
Approximately nine months later, on August 9, 2006, Mr. Scott filed an appeal challenging the layoff on grounds that the Commission failed to comply with the Civil Service Commission Rules relative to layoffs. In response, the appointing authority, the Department of Housing, filed a Motion for Summary Disposition seeking a dismissal of the appeal asserting it was untimely filed under Civil Service Commission Rule II, Section 4.3, which provides:
Appeals to the Commission must be actually received in the Department of Civil Service no later than the close of business on the thirtieth (30th) calendar day following the date of the disciplinary letter provided to the employee by the Appointing Authority.... [Emphasis added.]
On October 23, 2006, the Commission rendered a judgment granting the Motion for Summary Disposition in favor of the appointing authority, and denying Mr. Scott's request for appellate relief based on the untimeliness of his appeal. On November 13, 2007, the Commission forwarded to Mr. Scott the notice of the final judgment denying his appeal, which had been rendered over one year earlier.[1] Mr. Scott now seeks review by this court of the dismissal of his appeal.

Standard of Review
The Commission's decisions are subject to review on any questions of law or fact. La. Const. Art. X, Section 12(B); Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La.1984). The appellate standard of review is whether the Commission's conclusion is arbitrary or capricious, or manifestly wrong. Evans v. Office of Technology, 07-1259, pp. 2-3 (La.App. 4 Cir. 4/9/08), 983 So.2d 188, 190. However, we are not limited to abuse of discretion or arbitrary and capricious standards when reviewing procedural decisions and questions of law, which fall within this court's traditional plenary function. Perkins v. Sewerage and Water Bd., 95-1031 (La.App. 4 Cir. 2/29/96), 669 So.2d 726, 727.

Discussion
In his first assignment, Mr. Scott alleges he was denied procedural due process insofar as the Commission erred in its failure to advise him in writing of his appellate rights stemming from his employment layoff. Specifically, Mr. Scott maintains, at the time of his termination in October 2005, was under the impression he had no right to appeal his layoff, citing Civil Service Commission Rule II, Section 4.1[2] and Rule XII, Section 1.1.[3] He contends *561 that he subsequently sought appellate relief following this court's decision in Joe Banks, et al. v. The City of New Orleans, et al., unpubl., 05-1513 (La.App. 4 Cir. 5/03/06) (hereinafter "Banks I"). Mr. Scott alleges he relies on Banks I for the proposition that he has a right to appeal from a layoff and the delay to file such does not commence until the appointing authority provides the employee formal notification of his or her appellate rights. Thus, Mr. Scott urges that, since the appointing authority did not provide him notice of his appeal rights after Banks I was rendered by this court, the delay for the filing of his appeal has not commenced.
We find Mr. Scott's reliance on Banks I to be misplaced. The only issue addressed by this court in the case was the question of subject matter jurisdiction.[4] Specifically, we concluded the plaintiffs, several former New Orleans Aviation Board (hereinafter "NOAB") employees that were also laid off at the same time as Mr. Scott due to the post-Katrina fiscal constraints, erred in first seeking appellate relief in Civil District Court for the Parish of Orleans. Relying on Louisiana Constitution Article X, Sections 8, 10, and 12, we held, "the layoff of an employee is a removal of an employee; jurisdiction thus lies first with the City Civil Service Commission, not the district court." Contrary to Mr. Scott's assertions, we did not provide any directive or guidance regarding a laid off civil servant's appellate rights and the circumstances in which those rights are implicated. Nor did we order the Commission to take any action or advise it as to how it should exercise its supervisory jurisdiction. Therefore, we find no merit in Mr. Scott's arguments in this regard.
We next address the timeliness of the filing of Mr. Scott's appeal. Mr. Scott waited over nine (9) months from the date of the Commission's termination letter to seek appellate relief. As stated, we find no merit in his claim that he did not believe he was afforded any appellate rights until this court rendered its decision in Banks I in May 2006. We also recognize the record is absent an assertion that he did not timely receive the letter notifying him of his termination. Finally, Mr. Scott was neither requested to return to work following the hurricane; nor was he issued a paycheck after October 2005.[5] Thus, even if Mr. Scott had not timely received the notice of his termination, he had constructive knowledge that he was laid off from his position several months prior to the filing of his appeal.
*562 Relying on Civil Service Commission Rule II, Section 4.3, the Commission summarily dismissed Mr. Scott's appeal on the basis that it had to be filed thirty (30) days from the date of his October 14, 2005 letter advising him of his termination. However, we find the Commission erred in relying on Section 4.3 since that provision pertains to appeals from the issuance of a "disciplinary letter." Civil Service Commission Rule II, Section 4.1 specifically provides a layoff is not considered a "disciplinary action". Thus, we find Section 4.3 to be inapplicable.
Notwithstanding, Civil Service Commission Rule II, Section 4.1 and Rule XII, Section 1.1 bar appellate review of a personnel action involving the imposition of a layoff. The Commission's rules afford an employee the right to appeal a layoff in the limited instance of the claim being premised on discrimination. Civil Service Commission Rule II, Section 4.5; Evans v. Office of Technology, p. 4, 983 So.2d at 190. Mr. Scott failed to comply with the requirements set forth in Civil Service Commission Rule II, Section 4.7 for assertion of a discrimination-based claim.
While we acknowledge the prohibition of appeals from fiscal layoffs, the Louisiana Constitution recognizes a classified civil servant's right to permanent status is a property right, which can not be deprived in the absence of due process of law. Louisiana Constitution Article X, § 1 et seq.; Bell v. Department of Health and Human Resources, 483 So.2d 945, 949 (La. 1986). The law is clear that due process is a flexible standard which implicates procedural protections on a de facto basis. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "Generally, before a person is deprived of a protected interest, he must be afforded some kind of hearing ... A deprivation without opportunity for a prior hearing or other effective substitute safeguard has been allowed in `extraordinary' or `truly unusual' situations." Fields v. State Through Dept. of Safety of Public Safety and Corrections, 98-0611, pp. 7-8 (La.7/8/98), 714 So.2d 1244, 1251 (citing Paillot v. Wooton, 559 So.2d 758, 762 (La. 1990)).
Applying these principles, the deprivation of appellate rights stemming from a layoff raises the implication that there is no State constitutional right to continued employment in the context of a layoff. Nonetheless, we find it significant that, like the former NOAB employees in Banks I, Mr. Scott does not contest the City's fiscal necessity for the post-Katrina layoff; rather, he objects to the manner in which the layoff was implemented by the Commission. Specifically, he states in his letter of appeal to the Commission that "[t]he City failed to utilize existing layoff regulations. Therefore the elimination of employees appears to be illegal because established procedures mandated by law were not followed."
As we noted in Joe Banks, et al. v. New Orleans Aviation Board, 08-0065 (La.App. 4 Cir. 7/9/08), 989 So.2d 819 (hereinafter "Banks II"), it is uncontested pre-termination hearings were not feasible for the civil servants subject of the post-Katrina layoff at issue in these proceedings. As such, the employees were prohibited from raising their concerns prior to their dismissal regarding the manner in which the layoff was to be implemented. While it is undisputed there is no legal authority to support the notion that a pre-termination hearing is required prior to implementing layoffs, we rely on the principle that due process is a flexible standard. Thus, some post-termination consideration of Mr. Scott's claims is appropriate to safeguard his constitutional interests. In stating such, we are cognizant that there is no *563 time delay specified in the Commission's rules for the filing of an appeal contesting the manner in which a layoff was conducted.
At this stage, we would ordinarily remand to the Commission to address the merits of Mr. Scott's claims. However, we conclude such action is unwarranted since this court in Banks II recently provided a ruling on the legality of the post-Katrina layoff procedures utilized by the Commission. We find it appropriate to apply Banks II to the case at hand because Mr. Scott adopted by reference and incorporated in brief the arguments raised by the NOAB plaintiffs in the Banks II proceedings relative to the alleged illegality of the post-Katrina layoff process.[6] Particularly, Mr. Scott, like the NOAB plaintiffs, objects to the Commission's failure to sequentially rank the employees through merit, seniority and military preference when implementing the layoff as required by Civil Service Commission Rule XII, Section 5.1.
In order to fully consider Mr. Scott's contentions, it is pertinent that we review the proceedings following this court's decision in Banks I leading up to the ultimate disposition of the merits of the NOAB plaintiffs' claims in Banks II. Specifically, following this court's ruling in Banks I that the Commission was vested with subject matter jurisdiction, the NOAB plaintiffs filed individual appeals with the Commission challenging their layoffs. The appointing authority, the NOAB, filed a Motion for Summary Disposition seeking dismissal of the appeals urging the employment terminations were fiscal decisions within its authority. Following a hearing, the Commission held that, while Civil Service Commission Rule II, Section 4.1 prohibits appeals challenging an appointing authority's fiscal decision to layoff individual employees, the plaintiffs were entitled to appeal whether the Civil Service Commission Rules were properly applied relative to the layoff. The Commission ordered a hearing before a hearing examiner to elicit testimony and other evidence regarding the procedures employed by the Commission and the City to effectuate the layoff at issue.
In June 2007, a hearing was conducted and testimony was elicited by both sides from, among others, Lisa Hudson, the Committee's Director of Personnel, and Brenda Hatfield, Ph.D., the City's Chief Administrative Officer. A review of the hearing testimony and documentary evidence indicated that, shortly after Hurricane Katrina made landfall, the City directed the Commission to implement an immediate massive reduction in workforce due to the rapid loss of the City's financial resources. Since the City was the subject of an unprecedented state of emergency and mandatory evacuation order, Ms. Hudson was vested with the broad discretion to execute the layoff by an emergency executive order of the Commission. Civil Service Commission Rule XII, Section 5 articulates the process to be followed in the event of a layoff, which requires the ranking of employees by various factors including "service ratings" and length of service.[7] Ms. Hudson concluded the actual *564 ranking of employees in sequential order was an impossibility under the urgent circumstances due to the lack of administrative resources with only one staff member and loss of accessible electronic information and documentation.[8]
In order to stay within the confines of the Civil Service Commission's Rules, Ms. Hudson decided to utilize Civil Service Commission Rule XII, Section 5.6.[9] Pursuant to such, a blanket layoff was to be imposed with only those employees deemed "absolutely essential" to the operation of the City being exempt. She reasoned, with the broad application of the provision, the ranking of personnel and other factors would be irrelevant since all nonessential personnel would be laid off. In accordance with such, the appointing authorities (i.e., directors of all city departments) complied with the administrative order to submit a list of its employees deemed "absolutely essential" to the City's recovery as it pertained to their respective operations. Thereafter, Ms. Hudson implemented the City's layoff of 2,929 employees.
In October 2007, the Commission adopted the Hearing Examiner's report granting the NOAB's Motion for Summary Disposition and dismissed the plaintiffs' appeals. The NOAB plaintiffs sought appellate review of the dismissals, raising as error the denial of their due process rights relative to the appellate proceedings, as well as the illegality of the manner in which the layoff was confected.
Following oral argument, this court affirmed in Banks II the Commission's finding that the NOAB plaintiffs were not denied due process. In support, we reasoned they were afforded a hearing wherein extensive testimony was elicited by both sides from various City officials, and documentary evidence submitted in connection with such, relative to the reasons for and the measures utilized in the execution of the post-Katrina layoff. In finding no merit to the plaintiffs' claims as to the illegality of the layoff process, we articulated the following:
In turning our attention to the appropriateness of the Commission's actions and, particularly, those of Ms. Hudson, we recognize this matter cannot be reviewed in a vacuum as is proposed by the plaintiffs. We are forever reminded of the extraordinary circumstances giving rise to the instant litigation. The City was facing an unparalleled financial crisis stemming from the vast devastation and abrupt loss of its financial resources from an unprecedented natural disaster. With the City's inability to sustain its workforce, the Commission was unduly burdened with the enormous *565 task of eliminating all personnel, individuals already detrimentally affected by the storm, that were deemed not absolutely critical to the City's recovery. Compounding the problem, the Commission lacked the administrative resources to conduct the layoff as it would under ordinary circumstances.
Civil Service Commission Rule XII, Section 5.6 expressly grants the Personnel Director the necessary discretion to retain employees essential to an appointing authority, regardless of rank. The provision does not limit the instances in which the essential employee exemption would apply to a layoff process. While we acknowledge it was likely unforeseeable that Section 5.6 would be utilized to facilitate a layoff of the entirety of the City's personnel following a natural disaster, we can not say Ms. Hudson erred in relying on the provision under the facts.
As to the logistical application of Section 5.6 to the layoff, the plaintiffs urge their jobs were terminated at the "whim" of the Director of the NOAB without regard to any objective criteria. In support, they cite the Commission's failure to utilize the ranking factors set forth in Civil Service Commission Rule XII, Section 5. We find no merit in the plaintiffs' argument in this regard. All City employees, with the exception of those designated as essential, were laid off. As such, the Commission's sequential ranking of employees, aside from being impossible, was unnecessary. Moreover, Ms. Hudson and Dr. Hatfield, in light of the exigent circumstances and limited administrative resources, took a common sense approach in deferring to the appointing authorities regarding which individuals were critical to their respective recovery efforts. We are cognizant of the liberal protections afforded to civil servants in the merit system. See, Reimer v. Medical Center of Louisiana at New Orleans, 95-2799 (La.App. 4 Cir. 1/29/97), 688 So.2d 165, 168. Yet, there is no evidence upon which to draw a legitimate inference that the NOAB's selection of essential employees exempt from the layoff was driven by inappropriate influences or discrimination to the detriment of the plaintiffs.
In fact, our review of the record indicates the NOAB and the Commission took every measure to execute the layoff within the confines of the Civil Service Commission Rules so as to best protect the interests of the civil servants, while also balancing the City's need to eliminate nonessential jobs. While we are sympathetic to the losses suffered by the plaintiffs from the aftermath of Hurricane Katrina, we nevertheless conclude Ms. Hudson's actions taken on behalf of the Commission were not an abuse of her discretion afforded by Civil Service Commission Rule XII, Section 5.6 or in contravention of any other State law.
Joe Banks, et al. v. New Orleans Aviation Board, pp. 5-6, 989 So.2d at 826-27.
For the reasons expressed in Banks II, we find no merit in the arguments adopted by Mr. Scott as to the illegality of the post-Katrina layoff. We conclude the dismissal of the appeal is appropriate under the facts.

DECREE
Accordingly, for the assigned reasons, we affirm the Civil Service Commission's dismissal of Mr. Scott's appeal.
AFFIRMED.
NOTES
[1] The record is absent any information as to why it took the Commission over one year to provide Mr. Scott notice of the dismissal of his appeal. Even taking into consideration the unusual circumstances caused by Hurricane Katrina, we find the Commission's one-year delay to simply provide a civil servant notification of its appellate disposition of a personnel action to be unreasonable.
[2] Civil Service Commission Rule II, Section 4.1 provides, in pertinent part:

Regular employees in the classified service shall have the right to appeal disciplinary actions to the Commission, including dismissal, involuntary retirement, demotion, suspension, fine or reduction in pay. However, a demotion, reinstatement to a lower classification, transfer, reduction in pay or layoff resulting from the application of the provisions of Rule XII governing layoffs shall not be considered a disciplinary action and thus shall not warrant an appeal ...
[Emphasis added.]
[3] Civil Service Commission Rule XII, Section 1.1 provides:

All personnel actions implemented during the course of a layoff, including but not limited to, demotions, terminations, reinstatements, transfers and resignations shall not be considered disciplinary and thus, shall not afford any employee a right of appeal to the Commission.
[Emphasis added.]
[4] As to the procedural history of Banks I, suit was filed in Civil District Court for the Parish of Orleans in 1995 by several former New Orleans Aviation Board employees that were laid off post-Katrina. The employees urged in their petition against the City and the Commission they were removed from their classified permanent positions in contravention of the Louisiana Constitution and the Commission's rules. See Joe Banks, et al. v. The City of New Orleans, et al., No. 05-12521, Civil District Court for the Parish of Orleans, Div. "F". The defendants filed exceptions of lack of subject matter jurisdiction alleging the plaintiffs' exclusive remedy was by way of appeal to the Commission. The trial court denied the exceptions. On May 3, 2006, in an unpublished opinion, this court reversed the lower court and granted the exceptions. Relying on Article X of the Louisiana Constitution, we held jurisdiction lies first with the Commission, not the district court, when a civil servant seeks appellate relief from a layoff.
[5] The letter advising Mr. Scott of his employment termination stated the last payroll checks would be issued on October 14, 2005.
[6] James Stovall, Mr. Scott's representing counsel, is also the attorney for the NOAB plaintiffs in the Banks proceedings. The instant case was filed in this court and oral argument was conducted on the same days as Banks II.
[7] Civil Service Commission Rule XII, Section 5, entitled "Sequence of Ranking Factors for Regular Employees," provides in part:

5.1 Layoffs are determined by ranking in one of five categories, with Unsatisfactory being the first category affected, followed by Needs Improvement, Competent, Exceeds Requirements and Outstanding.... In order to determine the ranking of regular employees for an anticipated layoff, each employee's service ratings for no more than the past three years of consecutive service are averaged; the resultant scores are ranked in ascending order and grouped ...
[8] Ordinarily, it would have taken in excess of forty-five (45) days to implement such a large scale layoff with full access to electronic and documentary information and the Commission's normal support staff of thirty-seven (37) individuals.
[9] Rule XII, Section 5.6 provides:

If an appointing authority feels that a certain employee is absolutely essential to the efficient and effective operation of the organization unit because of special skills or abilities, and the appointing authority wishes to retain the employee despite his or her ranking on the layoff list, a written request must be submitted to the Personnel Director requesting permission to do so. This request must set forth, in detail, the specific skills and abilities possessed by the individual and the reasons that this particular employee be retained despite his or her ranking on the layoff list.